UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
HEUNG YOL KIM,

                            Plaintiff,

              -against-                             **MEMORANDUM AND ORDER**

J&J SAFETYMATE CORP., d/b/a          22-CV-1070 (TAM)
COLLEGE POINT SAFETY MATE, and
YUN HEE KIM,

                          Defendants.
-----------------------------------------------------------X

**TARYN A. MERKL**, United States Magistrate Judge:

        Heung Yol Kim ("Plaintiff") initiated this action on February 28, 2022, against J & J Safetymate Corp. d/b/a College Point Safety Mate and Yun Hee Kim (collectively, "Defendants") for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), Art. 6 § 190 *et seq.*[1] (*See* Compl., ECF No. 1.) On January 6, 2025, the Court held a one-day bench trial on damages. (*See* Jan. 6, 2025 ECF Min. Entry.) The parties previously stipulated to liability as to all the NYLL claims included in the complaint and to forgo the FLSA claims. (*See id.*; Trial Tr., ECF No. 31, at 29:23–30:22.) Having reviewed the evidence, assessed the credibility of the witness, and applied the relevant law, the Court now makes the following findings of fact and reaches the following conclusions of law.

---

[1] Plaintiff originally brought this action "on behalf of himself and all similarly situated non-exempt employees (i.e.[,] store clerk[s] and cashier[s]) who work or have worked at [College Point Safety Mate] within three years of the date of the filing of this action and who elect to opt-in to this action." (Compl., ECF No. 1, ¶ 20.) However, Plaintiff did not elect to file a motion for collective certification, and no additional plaintiffs joined the litigation.

1

## PROCEDURAL HISTORY AND TRIAL BACKGROUND

### I. Procedural History

As previously discussed, Plaintiff initiated his complaint on February 28, 2022, bringing FLSA and NYLL claims for unpaid minimum wages and unpaid overtime wages, spread-of-hours pay claims under the NYLL, and NYLL Wage Theft Protection Act ("WTPA") claims. (Compl., ECF No. 1.) Plaintiff claimed that Defendants violated the FLSA and the NYLL, and sought damages for unpaid minimum wages, unpaid overtime wages, unpaid spread-of-hours pay, liquidated damages, prejudgment interest, post-judgment interest, and attorneys' fees. (*Id.*)

The parties unsuccessfully attempted to settle the case via mediation and a settlement conference before proceeding to motion practice. (*See* May 12, 2022 ECF Order Referring Case to Mediation; Status Report, ECF No. 9; May 18, 2023 ECF Min. Entry & Order.) The parties then filed a fully briefed summary judgment motion on August 7, 2023, which was referred to the Court for a report and recommendation. (Fully Briefed Mot. for Summ. J., ECF No. 19; Dec. 19, 2023 ECF Order Referring Mot.) On February 2, 2024, the Court recommended that Plaintiff's motion for summary judgment be denied. (R. & R., ECF No. 20.) The Honorable Orelia E. Merchant adopted the report and recommendation in its entirety on February 22, 2024, and directed the parties to file a joint pretrial order within thirty days. (Mem. & Order, ECF No. 21.) Following the denial of summary judgment, the Court held a pre-settlement status conference. (Mar. 12, 2024 ECF Min. Entry & Order.) At the March 12, 2024 conference, the parties indicated that they intended to proceed to trial. (*Id.*)

On July 29, 2024, the parties filed their proposed joint pretrial order. (Joint Pretrial Order, ECF No. 22.) On August 1, 2024, Judge Merchant set a trial schedule,

with jury selection beginning on October 21, 2024, and a final pretrial conference on October 15, 2024. (Aug. 1, 2024 ECF Scheduling Order.)

In lieu of proceeding to trial on liability, on October 7, 2024, the parties filed a letter stating that "Defendants J & J Safetymate Corp. and its owner Ms. Yun Hee Kim have agreed to stipulate their liability under [the] NYLL for unpaid wage[s] to plaintiff." (Letter, ECF No. 25.) The parties further represented that, "[i]n light of this development, the only issue remaining is the damages amount," and requested an inquest hearing. (*Id.*) In addition, the parties consented to jurisdiction of the undersigned Magistrate Judge. (Consent to Jurisdiction, ECF No. 24.) In response, Judge Merchant canceled the October 15, 2024 pretrial conference and October 21, 2024 jury trial. (Oct. 7, 2024 ECF Order.) The Court then scheduled a status conference. (Oct. 8, 2024 ECF Scheduling Order.)

At the status conference, the Court clarified the parties' request for a hearing, and the parties confirmed their intent to proceed to a one-day bench trial on the issue of damages. (Oct. 31, 2024 ECF Min. Entry & Order.) The Court scheduled the bench trial for January 6, 2025. (*Id.*)

On January 6, 2025, the Court held a damages trial. (Jan. 6, 2025 ECF Min. Entry.) Plaintiff appeared and was cross-examined, testifying through a Korean language interpreter. (*See generally* Trial Tr., ECF No. 31.) The parties did not call any other witnesses. (*See generally id.*) At the conclusion of the trial, the parties again represented that they stipulated to liability as to all the NYLL claims included in the complaint and confirmed that Plaintiff was forgoing the FLSA claims. (Trial Tr., ECF No. 31, at 29:23–30:22 (representing that the trial was to address NYLL claims concerning "how many hours worked, how much [Plaintiff] was paid, to figure out unpaid wage portion as well as the other counts in the Complaint that the plaintiff is seeking. So unpaid wage,

3

unpaid spread-of-hours pay, and then the claims under New York Labor Law for wage theft provision, not issuing the time-of-hire wage notice, not issuing pay stub, and the relevant prejudgment interest").) At the close of trial, the Court directed Plaintiff to file his proposed findings of fact by January 27, 2025, and directed Defendants to file their response by February 10, 2025. (Jan. 6, 2025 ECF Min. Entry.)

Plaintiff filed his proposed findings of fact and corresponding damages calculation on January 22, 2025. (Pl.'s Proposed Findings of Fact ("Pl.'s Findings"), ECF No. 29.) Defendants submitted their response on February 9, 2025. (Defs.' Response to Proposed Findings of Facts ("Defs.' Response"), ECF No. 30.)

## II. Trial Background

"In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1). "It is within the province of the district court as the trier of fact to decide whose testimony should be credited." *Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 95 (2d Cir. 2012).

Here, the parties have already stipulated as to Defendants' liability, so the Court is only addressing how to calculate damages based on the evidence adduced at trial. As noted above, Plaintiff was the sole witness at trial. Defendant offered no witnesses, and neither party offered any documentary evidence regarding Plaintiff's employment or compensation. Of importance here, in evaluating unpaid wage claims, the Court must apply a burden-shifting framework: plaintiffs seeking to recover lost or unpaid wages must show that they worked the hours they claim, but it is the employer's responsibility to create, maintain, and preserve employees' records of employment. Significantly, the NYLL expressly provides that the employer "shall bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements." NYLL § 196-a(a); *see also Chichinadze v. BG Bar Inc.*, 517 F. Supp. 3d 240, 253 (S.D.N.Y. 2021)

4

(concluding that employers "must demonstrate by a preponderance of the evidence that it in fact paid its employees 'wages, benefits, and wage supplements'" (quoting NYLL § 196-a(a)); *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 498 (S.D.N.Y. 2017) ("[T]he NYLL — unlike the FLSA — does not permit an employer to discharge [its] burden by undermining the reasonableness of an employee's evidence that he was underpaid."), *aff'd* 752 F. App'x 33 (2d Cir. 2018); *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 332 n.15 (S.D.N.Y. 2005) (noting that the NYLL requires the defendant to affirmatively show that an employee was properly paid for hours worked, whereas the FLSA allows a defendant to negate the reasonableness of any inferences arising from an employee's evidence). Where defendants fail to meet their burden of proof, "the court may then award damages to the employee, even though the result be only approximate." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946) (assessing burden shifting in the FLSA context); *see also Gamero*, 272 F. Supp. 3d at 498; *Hernandez v. Jrpac Inc.*, No. 14-CV-4176 (PAE), 2016 WL 3248493, at *27–28 (S.D.N.Y. June 9, 2016) (applying the burden-shifting framework to minimum and overtime wage claims brought under the FLSA and the NYLL).

The Court finds Plaintiff's testimony credible, in part based on his earnest demeanor, and also because no alternative or opposing evidence was introduced. Accordingly, Plaintiff has satisfied the obligations under the NYLL and *Anderson* of proving that "he has in fact performed work for which he was improperly compensated and . . . produce[d] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 687. Defendants have produced no documentary evidence or elicited any testimony in response, and have thus failed to demonstrate, by a preponderance of the evidence, that they paid Plaintiff the wages to which he was entitled. *See* NYLL § 196-a(a). Accordingly, the Court finds

5

that Defendants have "failed to negate the reasonableness of the inference arising from [P]laintiff's evidence, and will adopt the wages to which [P]laintiff testified in calculating damages." *Doo Nam Yang*, 427 F. Supp. 2d at 335. Against that backdrop, the Court makes the following findings of fact and conclusions of law based on Plaintiff's testimony on trial.

## FINDINGS OF FACT

As set forth above, Plaintiff was the sole witness at trial, and no party offered any documentary evidence regarding Plaintiff's employment or compensation. The evidence offered at the trial adduced the following facts.

Plaintiff was employed by Defendants between September 2013 and January 23, 2022.[2] (Trial Tr., ECF No. 31, at 8:3–6.) Plaintiff "work[ed] as a cashier and . . . set[] up the goods" at Defendants' College Point Safety Mate store. (*Id.* at 7:17–8:9.) The store had four employees total, including the store's owner, Defendant Kim. (*Id.* at 10:24–11:4.) Plaintiff worked four days per week, 12 hours each day, for a total of 48 hours per week. (*See id.* at 8:17–23.) Each shift began at 7:00 p.m. and ended at 7:00 a.m. (*Id.* at 8:20–21.) Plaintiff maintained the same work schedule during his entire period of employment; he testified that he was never late to work and he never missed a shift. (*Id.* at 11:18–12:3, 16:25–17:8.) Plaintiff also testified that he worked at the store, in person, during the entirety of his employment, including during the Covid-19 pandemic. (*See id.* at 9:6–19.) Plaintiff did not log or track his working hours. (*Id.* at 9:20–10:10.)

---

[2] As discussed in the Court's report and recommendation denying summary judgment, Plaintiff is limited in his ability to recover for wage deficiencies under the NYLL's six-year statute of limitations. (*See, e.g.*, R. & R., ECF No. 20, at 15 n.8.) *See also* NYLL § 663(3). The relevant period at issue is therefore February 28, 2016, to January 23, 2022.

Plaintiff was paid once a week, at a weekly rate. (*See, e.g.*, *id.* at 12:4–11, 15:15–15:16.) Plaintiff was paid $525.00 per week in 2016, 2017, and 2018; $550.00 per week in 2019, 2020, and 2021; and $600.00 per week in 2022. (*Id.* at 13:14–15:6.) Plaintiff was largely paid in cash, though he received payment via check on two separate occasions towards the end of his employment. (*Id.* at 15:17–16:2, 24:7–24:18.)

Plaintiff was never given overtime compensation for hours worked above 40 hours per week. (*Id.* at 15:7–10.) He did not receive spread-of-hours pay for working over ten hours a day, which occurred during each work shift, as he worked 12 hours per shift. (*Id.* at 15:11–14.) Plaintiff was never given a pay stub with his weekly pay. (*Id.* at 16:3–7.) He also never received any written notice regarding his hire and wage rate at the time he was hired, nor did he receive any written pay notices. (*Id.* at 16:8–15.)

## CONCLUSIONS OF LAW

As previously discussed, the parties have agreed to stipulate to Defendants' liability as to Plaintiff's NYLL claims for unpaid minimum wages, unpaid overtime wages, unpaid spread-of-hours pay, and missing wage notices and statements. (Trial Tr., ECF No. 31, at 29:23–30:22.)

Plaintiff asserts that he is entitled to damages in the sum of $193,039.81, broken down as follows: $5,280.00 in unpaid minimum wages, $51,335.04 in unpaid overtime wages, $15,567.00 in unpaid spread-of-hours pay, $38,675.73 in NYLL prejudgment interest, $72,182.04 in liquidated damages, and $10,000 in NYLL penalties, plus fees and costs. (Pl.'s Findings, ECF No. 29, ¶ 39.) Plaintiff's damages calculation, submitted as Exhibit 1 to his Proposed Findings of Fact, shows how Plaintiff arrived at the proposed damages. (*See* Damages Chart, ECF No. 29-1.) In response, Defendant argues that Plaintiff's damages calculation is "demonstrably incorrect," as page six "reflects sub-totals completely different th[a]n the totals claimed," and that "[b]ased on the clear

miscalculation in the Exhibit[,] the Court should reject the proposed Finding of Fact." (Defs.' Response, ECF No. 30.) The Court does not find that Plaintiff's damages calculation should be rejected on this basis and notes that the subtotals alleged in the damages chart do in fact correspond with the total damages Plaintiff claims. However, the Court also finds that Plaintiff's damages calculation is not entirely accurate under the factual circumstances established at trial and in light of the relevant laws and labor regulations.

In light of the findings of fact outlined above, the Court reviews and independently calculates each damages claim below.

## I. Damages for Unpaid Minimum Wages

Under the NYLL, the "regular hourly wage rate" for non-hospitality industry employees[3] paid on a weekly basis "shall be determined by dividing the total hours worked during the week into the employee's total earnings." N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.16. Plaintiff's regular rate of pay is therefore calculated by dividing his weekly pay by the number of hours worked. *See Sanchez v. Ms. Wine Shop*, 643 F. Supp. 3d 355, 371 (E.D.N.Y. 2022). It has been observed, in the analogous FLSA context, that "[t]his method of calculation has strange consequences; it gives those workers who work longer hours a lower regular rate. Courts nevertheless are constrained to follow the FLSA regulations." *Yin v. Kim*, No. 07-CV-1236 (DLI) (JO), 2008 WL 906736, at *3 (E.D.N.Y. Apr. 1, 2008) (discussing proper methodology for calculating the regular rate of pay under the Department of Labor regulations); *see also Du v. CGS Metal Fabrication*,

---

[3] Defendants operated a store and Plaintiff worked as a cashier and helped "set[] up the goods" at the store. (*See* Trial Tr., ECF No. 31, at 7:17–8:9.) Plaintiff is therefore considered a non-hospitality industry employee. *See* N.Y. Comp. Codes R. & Regs. tit. 12, §§ 142-2.16, 142-3.1, 142-3.2(a).

8

*Inc.*, No. 19-CV-1821 (ARR) (TAM), 2022 WL 987316, at *8 (E.D.N.Y. Jan. 14, 2022) (calculating rate of pay for non-hospitality plaintiff), *report and recommendation adopted*, Jan. 31, 2022 ECF Order Adopting R. & R; *Moon v. Kwon*, 248 F. Supp. 2d 201, 230 (S.D.N.Y. 2002) ("While an employer may agree to compensate an employee with a weekly, monthly, or annual salary, an employee's regular rate is nevertheless an hourly rate of pay, determined by dividing the employee's weekly compensation by the number of hours for which that compensation is intended.").

Throughout the relevant period of Plaintiff's employment, the New York City minimum wage was higher than the federal minimum wage. Given the parties' stipulation to liability under the NYLL, the minimum wage damages owed to Plaintiff are calculated based on the New York City minimum wage. *See Charvac v. M & T Project Managers of N.Y., Inc.*, No. 12-CV-5637 (CBA) (RER), 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015) (noting that "the law providing the greatest recovery will govern" the calculation of damages). Plaintiff's minimum wage damages are calculated by taking the difference between Plaintiff's regular rate of pay and the New York City minimum wage during the relevant time periods, multiplied by the number of non-overtime hours worked per week (40), as follows:

| Period Date Range[4] | # of Weeks | Weekly Pay | Reg. Rate of Pay (total weekly pay/total hours per week)[5] | NYC Min. Wage[6] | Difference between Min. Wage & Reg. Rate of Pay | Number of Hours Worked (weeks x 40) | Min. Wage Total (Wage Diff. x Hours Worked) |
|---|---|---|---|---|---|---|---|
| 2/28/2016 – 12/30/2016 | 43.86 | $525.00 | $10.94 | $9.00 | -$1.94 | 1754.4 | $0.00 |
| 12/31/2016 – 12/30/2017 | 52.14 | $525.00 | $10.94 | $10.50 | -$0.44 | 2085.6 | $0.00 |
| 12/31/2017 – 12/30/2018[7] | 52.14 | $525.00 | $10.94 | $12.00 | $1.06 | 2085.6 | $2,210.74 |
| 1/1/2019 – 12/30/2019 | 52 | $550.00 | $11.46 | $13.50 | $2.04 | 2080 | $4,243.20 |
| 12/31/2019 – 12/31/2020 | 52.43 | $550.00 | $11.46 | $15.00 | $3.54 | 2097.2 | $7,424.09 |
| 1/1/2021 – 12/31/2021 | 52.14 | $550.00 | $11.46 | $15.00 | $3.54 | 2085.6 | $7,383.02 |
| 1/1/2022 – 1/23/2022 | 3.29 | $600.00 | $12.50 | $15.00 | $2.50 | 131.6 | $329.00 |
| **Total Unpaid Minimum Wage Deficiency:** | | | | | | | **$21,590.05** |

---

[4] The period date range was set based on calendar year, with some variation based on when the New York City minimum wage rate and/or Plaintiff's weekly pay increased, *see infra* notes 5 and 6.

[5] The regular rate of pay is calculated by dividing Plaintiff's weekly rate of pay by the number of hours that Plaintiff worked (48 hours per week). (Trial Tr., ECF No. 31, at 8:17–23.) Plaintiff was paid $525 per week from February 28, 2016, through December 31, 2018, and then at a rate of $550 per week from January 1, 2019, to December 31, 2021, and then $600 per week from January 1, 2022, to January 23, 2022. (*See id.* at 13:14–15:6.) For 2016 and 2017, Plaintiff's regular rate exceeded the New York City minimum wage, resulting in no minimum wages due for those years.

[6] Because the College Point Safety Mate store had a total of four employees, the applicable minimum wage is that for a small employer in New York City (for employers with ten or less employees). (*See* Trial Tr., ECF No. 31, at 10:24–11:4.) *See* New York Department of Labor, History of Minimum Wage, *available at* https://dol.ny.gov/history-minimum-wage-new-york-state. The chart further reflects the date on which applicable minimum wage rate changes went into effect — i.e., December 31 of the relevant years. *See id.*

[7] The Court's damages calculation is based on Plaintiff's testimony establishing that he worked four days per week, for 12 hours per day. In estimating damages in this manner, the Court notes that for calculating damages for the calendar week that includes December 31, 2018, two relevant events occurred that would impact the damages calculation for that week and December 31, 2018, specifically (if Plaintiff worked that day, which is unclear from the record as no evidence was adduced about what *days of the week* Plaintiff typically worked). First, the New York City minimum wage rate changed on December 31, 2018 to $13.50. *See supra* note 6. Second, Plaintiff testified that his weekly pay went up to $550 per week on January 1, 2019. *See supra* note 5. For simplicity (and in the absence of evidence of whether Plaintiff worked on December 31, 2018, specifically), the Court essentially assumes that Plaintiff did not work that day, and estimates four days per week for the period from December 31, 2017 through December 30, 2018, a period that spans 52.14 weeks, as well as four days per week for all of the pertinent weeks in the subsequent years of employment.

Plaintiff asserts that he is entitled to $5,280.00 in unpaid minimum wages, an amount significantly lower than the Court's calculation. (Pl.'s Findings, ECF No. 29, ¶ 39.) Plaintiff appears to have calculated his regular rate of pay by dividing his weekly pay by 40 hours, instead of by 48 hours, the number of hours that Plaintiff worked each week. (*See* Damages Chart, ECF No. 29-1.) Plaintiff's proposed regular rates of pay are thus higher than the calculations reached when considering the applicable regulations, and his resulting minimum wage deficiency calculation is impacted as a result.

As discussed above, the New York City regulations expressly provide that "the regular hourly wage rate shall be determined by dividing the total hours worked during the week into the employee's total earnings." N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.16; *Sanchez*, 643 F. Supp. 3d at 371. Using this methodology, the Court finds that Plaintiff is entitled to **$21,590.05** in unpaid minimum wages.

## II. Damages for Unpaid Overtime Wages

The NYLL requires that an employee receive compensation for hours worked in excess of 40 hours per week at a rate not less than 1.5 times the regular rate of pay. *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2. In the event that the regular rate falls below the applicable minimum wage, an employee is entitled to compensation at a rate of 1.5 times the applicable minimum wage. *See Perez Campos v. Quentin Market Corp.*, No. 16-CV-5303 (DLI) (RER), 2018 WL 9945754, at *7–8 (E.D.N.Y. Oct. 17, 2018), *report and recommendation adopted,* Mar. 31, 2019 ECF Order Adopting R. & R.

Because Plaintiff has already been paid the regular rate for all hours worked, the overtime wage deficiency is calculated by multiplying the difference between the paid rate and the overtime wage rate (minimum wage rate or actual rate of pay, whichever is greater, times 1.5) by the total number of overtime hours worked. *See, e.g.*, *Jacome v. Optical 49, Inc.*, No. 20-CV-2615 (DG) (PK), 2021 WL 3375134, at *2, *11 (E.D.N.Y. July 9,

11

2021), *report and recommendation adopted*, 2021 WL 3373130 (E.D.N.Y. Aug. 3, 2021) (using this method to calculate the overtime award where plaintiff was paid a weekly flat rate despite working over 40 hours per week); *Perez Campos*, 2018 WL 9945754, at *6 (same). Plaintiff worked 48 hours per week, for a total of eight hours of overtime each week. (*See* Trial Tr., ECF No. 31, at 8:17–23.) Applying the methodology set forth in the applicable New York regulations to the Court's findings of fact, the Court has independently calculated a damages estimate as to Plaintiff's overtime wage deficiency, as detailed in the chart below:

| Period Date Range | # of Weeks | Regular Rate of Pay (total weekly pay/total hours per week)[8] | NYC Min. Wage | OT Wage[9] | Difference between OT Wage & Regular Rate of Pay | OT Hours (weeks x 8 hours per week) | OT Wage Total (OT Diff. x OT Hours) |
|---|---|---|---|---|---|---|---|
| 2/28/2016 – 12/30/2016 | 43.86 | $10.94 | $9.00 | $16.41 | $5.47 | 350.88 | $1,919.31 |
| 12/31/2016 – 12/30/2017 | 52.14 | $10.94 | $10.50 | $16.41 | $5.47 | 417.12 | $2,281.65 |
| 12/31/2017 – 12/30/2018 | 52.14 | $10.94 | $12.00 | $18.00 | $7.06 | 417.12 | $2,944.87 |
| 1/1/2019 – 12/30/2019 | 52 | $11.46 | $13.50 | $20.25 | $8.79 | 416 | $3,656.64 |
| 12/31/2019 – 12/31/2020 | 52.43 | $11.46 | $15.00 | $22.50 | $11.04 | 419.44 | $4,630.62 |
| 1/1/2021 – 12/31/2021 | 52.14 | $11.46 | $15.00 | $22.50 | $11.04 | 417.12 | $4,605.00 |
| 1/1/2022 – 1/23/2022 | 3.29 | $12.50 | $15.00 | $22.50 | $10.00 | 26.32 | $263.20 |
| **Total Unpaid Overtime Wage Deficiency** | | | | | | | **$20,301.29** |

---

[8] As discussed *supra* note 5, the regular rate of pay is calculated by dividing Plaintiff's weekly rate of pay by the number of hours Plaintiff worked (48 hours per week).

[9] The applicable overtime rate is calculated as the higher of 1.5 times Plaintiff's regular rate of pay or 1.5 times the applicable minimum wage in New York City at that point in time. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2. In 2016 and 2017, Plaintiff's regular rate of pay exceeded the minimum wage, so the overtime wage rate is calculated as 1.5 times his regular rate of pay ($10.94 x 1.5 = $16.41). Between 2018 and 2022, Plaintiff's regular rate of pay did not exceed the minimum wage, so his overtime wage is calculated as 1.5 times the New York City minimum wage, as listed in the "NYC Min. Wage" column. *See* New York Department of Labor, History of Minimum Wage, *available at* https://dol.ny.gov/history-minimum-wage-new-york-state. Plaintiff is entitled to the *aggregate* total of all overtime wages owed, based on the higher of 1.5 times Plaintiff's hourly rate or the applicable minimum wage rate. *See, e.g., Castelluccio v. Alphera Int'l N.A., LLC*, No. 20-CV-4050 (PKC) (AYS), 2021 WL 7283080, at *4 (E.D.N.Y. June 9, 2021) ("The totals for each week [of overtime pay] are then aggregated to calculate the total amount of overtime wages owed.").

Plaintiff asserts that he is entitled to $51,335.04 in unpaid overtime wages, a significantly higher amount than the Court's calculation. (Pl.'s Findings, ECF No. 29, ¶ 39.) As discussed above, however, Plaintiff calculated his regular rate of pay by dividing the weekly rate of pay by 40, rather than the total number of hours worked weekly, which was 48. Plaintiff therefore calculated a higher regular rate of pay than is warranted under the relevant regulations, which led to a higher overtime calculation. The Court declines to adopt Plaintiff's method, which is at odds with the regulations. *Cf. Sanchez*, 643 F. Supp. 3d at 371.

Accordingly, as detailed above, the Court finds that Plaintiff is entitled to **$20,301.29** in unpaid overtime wages.

### III. Damages for Unpaid Spread-of-Hours Pay

Under the NYLL spread-of-hours provision, employees who make minimum wage or less are entitled to an additional hour of pay at the prevailing minimum wage for every day they work more than 10 hours. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4 ("An employee shall receive one [additional] hour's pay at the basic minimum hourly wage rate . . . for any day in which: (a) the spread of hours exceeds 10 hours; or (b) there is a split shift; or (c) both situations occur."). "A limitation upon a plaintiff's eligibility to recover for spread-of-hours is that the plaintiff not earn more than the minimum wage." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 45 (E.D.N.Y. 2015); *see also Cao v. Wedding in Paris LLC*, 727 F. Supp. 3d 239, 294 (E.D.N.Y. 2024) (finding that plaintiffs were entitled to spread-of-hours pay for the period in which plaintiffs were paid less than minimum wage); *Guadalupe v. Tri-State Emp. Mgmt. & Consulting, Inc.*, No. 10-CV-3840 (NG) (CLP), 2013 WL 4547242, at *12–13 (E.D.N.Y. Aug. 28, 2013) (deferring to the New York Department of Labor's interpretation that

spread-of-hours pay is not available to employees whose compensation exceeds minimum wage).

Plaintiff's allegations and testimony established that he was entitled to spread-of-hours pay every shift that his pay fell below minimum wage, given that he worked 12-hour shifts. (*See* Trial Tr., ECF No. 31, at 8:17–23.) Plaintiff argues that he is entitled to $15,567.00 in spread-of-hours compensation. (Pl.'s Findings, ECF No. 29, ¶ 39; Damages Chart, ECF No. 29-1, at 6.) However, as set forth above, Plaintiff's regular rate of pay between February 28, 2016, and December 31, 2017, was more than the minimum wage rate, so Plaintiff is not entitled to spread-of-hours pay for this period of his employment. Because Plaintiff worked four days per week, he is entitled to four hours per week of spread-of-hours compensation for the period of employment between January 1, 2018, and January 23, 2022, when his rate of pay fell below minimum wage. (*See* Trial Tr., ECF No. 31, at 8:17–23.) The Court therefore calculates the spread-of-hours pay as follows:

| Period Date Range | # of Weeks | Regular Rate of Pay (total weekly pay/total hours per week)[10] | NYC Min. Wage | Hours for Spread-of-Hours pay (weeks x 4) | Spread-of-Hours Wage Deficiency (hours x min. wage) |
|---|---|---|---|---|---|
| 2/28/2016 – 12/31/2016 | 43.86 | $10.94 | $9.00 | n/a | n/a |
| 1/1/2017 – 12/31/2017 | 52.14 | $10.94 | $10.50 | n/a | n/a |
| 1/1/2018 – 12/30/2018 | 52.14 | $10.94 | $12.00 | 208.56 | $2,502.72 |
| 1/1/2019 – 12/30/2019 | 52 | $11.46 | $13.50 | 208 | $2,808.00 |
| 12/31/2019 – 12/31/2020 | 52.43 | $11.46 | $15.00 | 209.72 | $3,145.80 |
| 1/1/2021 – 12/31/2021 | 52.14 | $11.46 | $15.00 | 208.56 | $3,128.40 |
| 1/1/2022 – 1/23/2022 | 3.29 | $12.50 | $15.00 | 13.16 | $197.40 |
| **Total Unpaid Spread-of-Hours Pay:** | | | | | **$11,782.32** |

---

[10] As discussed *supra* note 5, the regular rate of pay is calculated by dividing Plaintiff's weekly rate of pay by the number of hours Plaintiff worked (48 hours per week).

14

Accordingly, the Court finds that Plaintiff is entitled to **$11,782.32** in unpaid spread-of-hours compensation.

**IV. Damages for NYLL Notice and Wage Statement Claims**

The parties also stipulated to Defendants' liability for failing to provide Plaintiff with wage notice and wage statements as required under NYLL §§ 195(1) and 195(3).[11] (Trial Tr., ECF No. 31, at 29:23–30:22.) Damages under each category are capped at $5,000. *See* NYLL § 198(1-b), § 198(1-d); *see also Du*, 2022 WL 987316, at *9. Plaintiff is therefore entitled to **$10,000.00** in statutory damages.

**V.  Liquidated Damages**

The NYLL entitles underpaid workers to "an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due." NYLL § 198(1-a); *see Garcia v. Giorgio's Brick Oven & Wine Bar*, No. 11-CV-4689 (LLS) (FM), 2012 WL 3339220, at *4 (S.D.N.Y. Aug. 15, 2012) ("Effective April 9, 2011, Sections 198(1-a) and 663(1) of the NYLL were amended to provide for liquidated damages equal to one-hundred percent of the amounts underpaid."), *report and recommendation adopted*, 2012 WL 3893537 (S.D.N.Y. Sept. 7, 2012).

---

[11] NYLL § 198(1-b) states:

> If any employee is not provided within ten business days of his or her first day of employment a notice as required by [§ 195-1], he or she may recover in a civil action damages of fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees.

In turn, NYLL § 198(1-d) provides:

> If any employee is not provided a statement or statements as required by [§ 195-3], he or she shall recover in a civil action damages of two hundred fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees.

Plaintiff contends that he is owed $72,182.04 in liquidated damages, which equals the sum of his compensatory damages ($5,280.00 in unpaid minimum wages, $51,335.04 in unpaid overtime wages, and $15,567.00 in unpaid spread-of-hours pay). (Pl.'s Findings, ECF No. 29, ¶ 39; Damages Chart, ECF No. 29-1.) Based on the Court's damages calculation, however, Plaintiff is entitled to liquidated damages of **$53,673.66**, the amount equal to the compensatory damages as calculated by the Court ($21,590.05 in unpaid minimum wages + $20,301.29 in unpaid overtime wages + $11,782.32 in unpaid spread-of-hours pay = $53,673.66).

## VI. Prejudgment Interest

The NYLL permits the award of both liquidated damages and prejudgment interest. *Begum v. Ariba Discount, Inc.*, No. 12-CV-6620 (DLC), 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015). This is because New York state law views liquidated damages as punitive, not compensatory; prejudgment interest is thus not considered a duplicative damages award. *See Janus v. Regalis Constr., Inc.*, No. 11-CV-5788 (ARR) (VVP), 2012 WL 3878113, at *8 (E.D.N.Y. July 23, 2012) (explaining that liquidated damages under the NYLL are "punitive in purpose"), *report and recommendation adopted*, 2012 WL 3877963 (E.D.N.Y. Sept. 4, 2012).

Prejudgment interest is calculated "on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law." *Mejia v. E. Manor USA Inc.*, No. 10-CV-4313 (NG) (SMG), 2013 WL 3023505, at *8 n.11 (E.D.N.Y. Apr. 19, 2013), *report and recommendation adopted,* 2013 WL 2152176 (E.D.N.Y. May 17, 2013). The statutory rate of interest in New York is nine percent per annum. N.Y. C.P.L.R. § 5004. Where damages were incurred at various times, interest may be calculated from a "single reasonable intermediate date." *Id.* § 5001(b). The midpoint of a plaintiff's employment is a reasonable intermediate date for purposes of calculating prejudgment

interest. *See Fermin,* 93 F. Supp. 3d at 49 (collecting cases); *see also Ying Ying Dai v. ABNS NY Inc.,* 490 F. Supp. 3d 645, 662 (E.D.N.Y. 2020). "Most courts in this district calculate simple prejudgment interest in NYLL actions from the midpoint date of the claims through the date judgment is entered." *Perez Campos,* 2018 WL 9945754, at *8 (citing *Fermin,* 93 F. Supp. 3d at 49). Under this approach, interest is to be accrued at the simple rate, from the "midpoint date . . . through the date judgment is entered." *Gortat v. Capala Bros.,* 949 F. Supp. 2d 374, 386 (E.D.N.Y. 2013) (quotation marks omitted).

Here, given that the relevant dates of Plaintiff's employment are February 28, 2016, to January 23, 2022, the midpoint of Plaintiff's claim period is approximately February 10, 2019. (*See* Pl.'s Findings, ECF No. 29, ¶¶ 4, 34; *see also* Trial Tr., ECF No. 31, at 8:3–6.) Accordingly, the Court awards prejudgment interest under the NYLL on Plaintiff's compensatory damages award of $53,673.66 from February 10, 2019, through the date judgment is entered (2,285 days), at a per diem interest rate of **$13.23** ($53,673.66 x 0.09 / 365), totaling **$30,230.55** (2,285 x $13.23).

\* \* \* \* \*

In sum, the Court finds that Plaintiff has shown his entitlement to a total award of **$117,347.32** in compensatory, statutory, and liquidated damages, as well as **$30,230.55** in prejudgment interest on Plaintiff's compensatory damages.

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff is entitled to an award of **$147,577.87**, comprised of: **$53,673.66** in compensatory damages; **$53,673.66** in liquidated damages; **$10,000.00** in statutory damages; and **$30,230.55** in prejudgment interest. The Court further finds that post-judgment interest shall be awarded at the rate set forth in 28 U.S.C. § 1961(a). The Court additionally finds that, for any amounts that are not paid within ninety days of the judgment or the expiration of the time to appeal,

Plaintiff is entitled to a fifteen-percent increase in damages under the NYLL, not including post-judgment interest.[12]

The Clerk of Court is respectfully directed to enter judgment against Defendants in the amount of **$147,577.87**, which includes:

1) **$53,673.66** in compensatory damages;

2) **$53,673.66** in liquidated damages;

3) **$10,000** in statutory damages;

4) Prejudgment interest on Plaintiff's compensatory damages award of $53,673.66, calculated at a per diem interest rate of **$13.23** from February 10, 2019, through May 13, 2025, in the amount of **$30,230.55**;

5) Post-judgment interest, which shall be calculated from the date the Clerk of Court enters judgment until the date of payment, using the rate set forth in 28 U.S.C. § 1961(a); and

---

[12] New York Labor Law provides that "[a]ny judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." NYLL § 198(4); *see also Rodriguez v. Solares Corp.*, No. 16-CV-3922 (CBA) (SMG), 2018 WL 7252949, at *12 (E.D.N.Y. Aug. 14, 2018), *report and recommendation adopted*, 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019). The increase applies only to damages awarded under state law. *See id.* (recommending that the fifteen-percent increase provided for under NYLL § 198(4) be limited to amounts "awarded exclusively under the NYLL"); *see also De la Cruz Casarrubias v. Surf Ave Wine & Liquor Inc.*, No. 20-CV-3003 (AMD) (RLM), 2021 WL 2227977, at *13 (E.D.N.Y. May 11, 2021), *report and recommendation adopted*, 2021 WL 2223275 (E.D.N.Y. June 2, 2021) (citing *Rodriguez* and limiting the conditional fifteen percent increase to damages awarded under the NYLL). Accordingly, Plaintiff's damages under the NYLL should be increased by fifteen percent for any amounts unpaid after ninety days following the issuance of the judgment or the expiration of the time to appeal. *See Gonzalez-Diaz v. Daddyo's Mgmt. Grp. Inc.*, No. 16-CV-1907 (ENV) (RML), 2017 WL 7625319, at *7 (E.D.N.Y. Nov. 7, 2017) (finding that the total amount of the judgment would automatically increase if any amount remained unpaid upon the expiration of ninety days following issuance of the judgment).

6) Interest from non-payment at the rate of fifteen percent (15%) for any amounts of the judgment, not including any post-judgment interest, that are not paid within 90 days of the issuance of the judgment, or 90 days of the expiration of the time to appeal and no appeal is pending, whichever is later.

**SO ORDERED.**

Dated: Brooklyn, New York
      May 13, 2025

*Taryn A. Merkl*
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE